36 F.3d 1093
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Keith ROBERTS, Plaintiff-Appellee,
v.
CITY OF NEWPORT NEWS; Ed Maroney, City Manager; Caroline
Hurt, Director of Personnel; L. L. Orie, Fire
Chief, Defendants-Appellants.
 No. 93-2327.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 19, 1994.
Decided Sept. 23, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Robert E. Payne, District Judge. (CA-92-155-4)
 Allen L. Jackson, Deputy City Atty., Newport News, Va., for appellants.
 James S. Ellenson, Newport News, Va.; Robert W. Lawrence, Beale L Lawrence, Newport News, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS and HAMILTON, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants, who are defendants in Appellee's ("Roberts") 42 U.S.C. Sec. 1983 (1988) action, appeal from a district court order that denied their motion for summary judgment in which they asserted a qualified immunity defense. Because we agree with the district court that qualified immunity does not shield the Defendants in this case, we affirm.
 
 
 2
 Roberts alleges that Appellants improperly fired him from his position as an emergency medical technician when he refused to submit to a urinalysis test for drugs. Roberts, who was employed by Appellants for approximately fourteen years, was reprimanded and punished when he admitted that he consumed two beers while on duty. Approximately two months after that incident, the fire chief ("Orie") received a phone message from an anonymous caller that Roberts had "a serious cocaine problem." Orie mistakenly believed that Roberts received a drug screening through an employee assistance program in which he was enrolled. Roberts was never informed of the message and continued to work without incident.
 
 
 3
 Roberts successfully completed the employee assistance program, but Orie informed him by letter that he remained on a probationary status and that he would be subject to periodic breathalyzer tests at any time while on duty. Orie also informed him that if any similar conduct recurred, he would be fired.
 
 
 4
 A few months later, Orie received another anonymous phone call from a female who stated that Roberts had "a problem other than with alcohol." This time, Orie spoke with the caller and ascertained that Roberts worked for the caller's husband. The caller stated that she had never seen Roberts use drugs. Orie ordered Roberts to provide a urine and blood sample over four weeks after receiving this call. Roberts had continued to fulfill his normal duties up to this point.
 
 
 5
 Roberts agreed to submit to a breathalyzer test, but objected to the blood test and stated that he would submit a urine sample only if it was tested for alcohol alone. Orie would not make such a guarantee and informed Roberts that if he did not provide a urine sample, he would be placed on administrative leave.[1] That afternoon, Roberts was suspended from his job for insubordination. On the following day, Roberts contacted Orie and stated that he would comply with any test he wanted him to take, but Orie informed him that it was too late. After an administrative hearing, Roberts's employment was terminated. A grievance panel affirmed the decision.[2]
 
 
 6
 Denials of motions to dismiss or for summary judgment based on qualified immunity are immediately appealable. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Ruling on a qualified immunity defense requires (1) identification of the specific right allegedly violated; (2)determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right. Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992).
 
 
 7
 Since the parties agree that Orie's demand that Roberts provide a urine sample for urinalysis constituted a search within the meaning of the Fourth Amendment, see National Treasury Employees Union v. Von Raab, 489 U.S. 656, 665 (1989), the right allegedly violated is sufficiently identified. We also find that the right was clearly established at the time of the alleged violation.
 
 
 8
 In Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989), the Supreme Court considered the constitutionality of drug and alcohol testing that was mandated by Federal Railroad Administration regulations. The Court determined that in limited circumstances where the privacy interest implicated by such a search were minimal and important government interests furthered by the intrusion would be placed in jeopardy by requiring individualized suspicion, a search could be reasonable despite the absence of individualized suspicion. Id. at 624. The Court noted that though tests of blood, urine and breath are "searches" for Fourth Amendment purposes, the government's interest in public and employee safety could justify departures from the usual warrant and probable cause requirements for a search. Id. at 617.
 
 
 9
 Any government order for urinalysis must be reasonable. Von Raab, 489 U.S. at 665-66; Skinner, 489 U.S. at 618-19. Such reasonableness depends upon the particular circumstances in the context in which the search takes place; the Court must balance the individual's legitimate expectations of privacy against the government's need to conduct the testing in the manner it proposes. Von Raab, 489 U.S. at 665-66. Urinalysis can be required where the testing is carried out under a specific plan and is applied either randomly or routinely to government employees, or private employees tested in satisfaction of government regulations, who occupy particularly sensitive positions. Id. at 676-77.
 
 
 10
 In both Von Raab and Skinner, the employers' constitutional drug testing programs were characterized by the limited discretion given to the employer in performing such tests. Under the scheme approved in Von Raab, the Customs Service tested every employee who sought employment in a sensitive position; in Skinner, the railroad regulations mandated post-incident urine tests of employees who were directly involved in either of two types of train accidents. In each case, all employees who met certain criteria related to the government interest in safety were affected by the drug testing plans.
 
 
 11
 Regardless of whether any drug testing plan is in place, a government employer may require an employee to submit to urinalysis where the employer has reasonable, articulable grounds to suspect an employee of illegal drug involvement. This would require individualized suspicion, specifically directed to the person who is targeted for the urinalysis test. See Jackson v. Gates, 975 F.2d 648, 653 (9th Cir.1992), cert. denied, 61 U.S.L.W. 3852 (U.S.1993); Ford v. Dowd, 931 F.2d 1286, 1289-90 (8th Cir.1991); Penny v. Kennedy, 915 F.2d 1065, 1067 (6th Cir.1990).
 
 
 12
 In Jackson, the court held that the employee's Fourth Amendment rights were violated because his association with another police officer who was suspected of being involved in drugs did not constitute "reasonable suspicion" justifying a demand that the employee submit to urinalysis. Jackson, 975 F.2d at 650-53. In Ford, the court held that rumors along with anonymous phone calls asserting that the employee used drugs did not provide an adequate basis for a reasonable suspicion that the employee was using drugs. Ford, 931 F.2d at 1292-94. In Everett v. Napper, 833 F.2d 1507 (11th Cir.1987), the court found that reasonable suspicion existed when information regarding an employee's drug use was provided by a fellow employee and a known drug dealer.
 
 
 13
 We find that Appellants did not have reasonable suspicion to compel Roberts to provide a urine sample for urinalysis. The only basis that Orie had for believing that Roberts was using drugs were the anonymous phone calls. Orie did not even speak with the first caller and there is no evidence of the caller's identity or relationship to Roberts. The second caller spoke with Orie directly and informed him that Roberts "has a problem other than with alcohol." The caller stated that she had never observed Roberts use drugs.
 
 
 14
 At Roberts's grievance hearing, Orie acknowledged that Roberts's job performance was evaluated monthly, and his performance was consistently "satisfactory." Neither did he know of anyone in the department who ever observed Roberts use drugs or exhibit any physical symptoms of drug use. He also acknowledged that he did not have any concern about Roberts using drugs until he received the second anonymous phone call. Orie went on to acknowledge that the policy of random testing of emergency medical employees who had access to drugs did not apply to Roberts. He also admitted that he "had absolutely no information whatsoever or had no suspicions that Keith Roberts was under the influence or using any type of drug except for two phone calls." In addition, it is noteworthy that several weeks passed between the second phone call and Orie's order that Roberts submit to a drug test. This tends to undercut Orie's position that he ordered the drug screening because he believed that the general public was at risk of imminent harm from Roberts's continued employment.
 
 
 15
 Thus, Orie's order that Roberts submit to urinalysis implicated his Fourth Amendment rights, and Appellants violated that right which was clearly established at the time. Orie's demand that Roberts submit to urinalysis was not made pursuant to a systemized program of any sort and Appellants did not have "reasonable suspicion" that Roberts was using drugs while on the job. The remaining question for qualified immunity purposes is whether a reasonable person in Appellants' position would have known that doing what he did would violate that right. Pritchett, 973 F.2d at 312.
 
 
 16
 If the law at the time was not clearly established, the official could not be expected to foresee later legal developments, nor could he fairly be said to "know" that the law prohibited conduct that was not previously unlawful. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). If the law was clearly established, however,
 
 
 17
 the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.
 
 
 18
 Id. at 818-19. Appellants do not allege, nor is there any supporting evidence establishing, "extraordinary circumstances" or that they "neither knew nor should have known of the relevant legal standard." Therefore, we find that a reasonable person in the Appellants' position should have known that their conduct infringed on a clearly established right. Thus, the district court properly found that the qualified immunity defense was inapplicable under these circumstances. We dispense with oral argument since the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Orie did not press his request for a blood sample
 
 
 [2]
 Although the grievance panel initially imposed a fifteen-day suspension because they thought termination was "too severe," the Director of Personnel ("Hurt") informed them that it could not impose any penalty less than termination if they found Roberts refused to obey a direct order