37 F.3d 1494
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Peter Alfred KUKLANE, Plaintiff-Appellee,
v.
John Wayne WHITTINGTON, Sergeant; Mark Brannock, Officer,
Defendants-Appellants,
and
City of Ocean City, Maryland, a body corporate and politic;
Roland F. Powell, Mayor; David Massey, Chief; John
Brandli, Officer; Charles R. Cohen, Officer; James Rattal,
Officer; Richard Shimp, Officer, Defendants.
 No. 93-1843.
 United States Court of Appeals, Fourth Circuit.
 Submitted: September 6, 1994.
Decided: October 17, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Edward S. Northrop, Senior District Judge. (CA-91-1500-N)
 Daniel Karp, ALLEN, JOHNSON, ALEXANDER & KARP, Baltimore, MD, for appellants. Peter D. Ward, BERNSTEIN, SAKELLARIS, WARD & TRUHE, Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before WIDENER and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 John Wayne Whittington appeals a jury verdict finding him liable under 42 U.S.C. Sec. 1983 (1988) for violating Peter Kuklane's Fourth Amendment rights. We affirm.
 
 
 2
 Kuklane and a friend, Mike Jordan, were listening to music on their front porch early in the morning. Officers Cohen and Rattal arrived on the scene in response to a noise violation call. Upon seeing the officers, Kuklane and Jordan turned off the music and retreated to the back balcony, which has no access to the street. After knocking and getting no reply, the officers went around back and asked Kuklane to let them in, he refused and went to bed. The officers called Sergeant Whittington, who arrived on the scene with Officer Brannock. After again knocking and getting no response, Whittington ordered Rattal to go through the screened window and open the door. After the door was opened by Rattal, the six officers on the scene searched the condo looking for Kuklane and Jordan, who were found asleep in an attic bedroom.[1] Kuklane suffered an eye injury during the arrest. Kuklane was charged with a noise violation, hindering arrest, resisting arrest, two counts of battery, and possession of a controlled dangerous substance.[2] He was found not guilty on all counts.
 
 
 3
 Kuklane filed a 42 U.S.C. Sec. 1983 (1988) action against the officers involved alleging that they used excessive force when arresting him and violated his Fourth Amendment rights by breaking into his home without a warrant. The district judge found that the warrantless arrest was unconstitutional as a matter of law. After a trial, a jury found that Officer Brannock had used excessive force on Kuklane, that Whittington had not acted in good faith in ordering the warrantless arrest of Kuklane in his home, and that Kuklane was entitled to damages totalling $2545 for medical and legal expenses resulting from the unconstitutional arrest.[3]
 
 
 4
 Whittington claims that the district court's finding that the arrest was unconstitutional was in error, that he was entitled to qualified immunity, and that the damage award was improper because it was supported only by Kuklane's testimony.
 
 
 5
 Unconstitutional arrest. Whittington asserts that under the doctrine of hot pursuit the warrantless search was permissible.
 
 
 6
 There is no question that arrests made inside a home without a warrant are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). However, in certain situations, exigent circumstances will justify a warrantless arrest in the home. Johnson v. United States, 333 U.S. 10, 14-15 (1948). The government bears the burden of overcoming the presumption of unreasonableness of warrantless searches. Welsh v. Wisconsin, 466 U.S. 740, 750 (1984).
 
 
 7
 Whittington alleges that because it was Sunday, and the rental office was closed, the officers would not have been able to identify the occupants of Kuklane's condo before Monday. Unless an immediate arrest was made, the perpetrators would have escaped.
 
 
 8
 However, the Supreme Court has held that, "hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor." Id. The offense at issue was violation of a noise ordinance--a misdemeanor punishable by a fine of between $100 and $500 and up to five days in jail. Evaluating Whittington's exigent circumstances--he and the other officers had the only exit to the condo blocked, thus, escape was not possible, and by his own admission at trial, Whittington could have obtained a warrant without waiting until Monday.[4] Additionally, there was no threat to public safety or to the officers, and no fear of destruction of evidence. Hence, given the minor nature of the offense, and the ability to get a warrant, the district court properly considered the warrantless arrest unconstitutional.
 
 
 9
 Qualified Immunity. Whittington alleges that even if the arrest was unconstitutional, the jury erred in finding that he was not entitled to qualified immunity for the violation.
 
 
 10
 The test for qualified immunity for officers in a 42 U.S.C. Sec. 1983 (1988) action is whether, while performing a discretionary function, the officer(s) engaged in conduct that violated "clearly established constitutional rights of which a reasonable person would have known." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).
 
 
 11
 The steps involved in proving a qualified immunity defense are: (1) to identify the right violated, (2) to determine if the right was clearly established when violated, and (3) to determine whether a reasonable person in the officer's position would have known that his conduct violated the right. Pritchett, 973 F.2d at 312. The evaluation of the third step must be made on the basis of information actually possessed by the officer at the critical time or reasonably available to him. Id. The specific right at issue here is Kuklane's constitutional right to be safe from warrantless arrests in his home, as provided in the Fourth Amendment. See Payton v. New York, 445 U.S. 573, 586 (1980). Warrantless arrests have been found proper when exigent circumstances exist which overcome the warrant requirement. Johnson v. United States, 333 U.S. 10, 14-15 (1948). However, the Supreme Court has made it clear that the gravity of the offense is an important factor in determining whether exigent circumstances exist to support a warrantless arrest in a home. Welsh v. Wisconsin, 466 U.S. 740, 753 (1984). The Court stated, "It is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor."[5] Id.
 
 
 12
 As stated previously, the offense at issue here was a violation of a misdemeanor noise ordinance punishable by a fine and no more than five days in prison. Whittington was a nineteen-year veteran of the police force with extensive Fourth Amendment training. Whittington testified that he knew that the seriousness of the offense was a consideration in determining if exigent circumstances exist. He also testified that he knew that warrantless arrests were presumptively unreasonable. Additionally, although Whittington stated that the main reason for the warrantless entry was to prevent the perpetrators of the noise violation from escaping, since they could not be identified until Monday, he later testified that he could have obtained a warrant prior to Monday. As for other exigent circumstances, Whittington acknowledged that there was no danger to public safety or to a hostage, and no fear of destruction of evidence. Based on the law, and the testimony, the right at issue here was clearly established and a reasonable officer would have known that breaking into a home to arrest a person for violating the noise ordinance was unreasonable, particularly when a warrant could be obtained and the exigent circumstances were minor or non-existent. Hence, the jury properly found that Whitting ton was not entitled to qualified immunity for his role in the warrantless arrest of Kuklane.
 
 
 13
 Damages. Appellants claimed that the damages award for medical and legal expenses sustained by Kuklane was erroneous because the only evidence of damages was Kuklane's testimony. The jury granted Kuklane forty-five dollars in medical expenses, and $2500 for legal expenses in connection with his criminal case. Kuklane testified that it cost him forty-five dollars "a pop" to fill the prescription given to him by the doctor for the injuries inflicted upon him during his arrest. He only filled the prescription once. Kuklane also testified that he was charged with noise violations, hindering arrest, resisting arrest, two counts of battery, and possession of a controlled dangerous substance, and that he and his attorney had to appear in court three times in connection with the criminal charges. Kuklane stated that his defense for these charges cost $3500. No bill was presented at trial.
 
 
 14
 A damage award is a factual finding reviewed under the clearly erroneous standard. Eureka Inv. Corp., N.V. v. Chicago Title Ins., Co., 743 F.2d 932, 940 (D.C.Cir.1984). Where the damages involve a claim for expenses (in this case attorney's fees and medical bills) as consequential damages, the determination of the award is made on the following factors: (1) whether the expense has in fact been paid or incurred, (2) whether the expenses were related to the wrong upon which liability as been based, and (3) whether the expense is reasonable. Id. at 942. Once the prima facie case of damages has been established, "the burden of production shifts to the opponent to go forward with evidence tending to mitigate or abate the damages or to undermine the credibility of the claimant's case." Id.
 
 
 15
 Kuklane testified that he paid a total of $3545 in medical and legal expenses as a result of his arrest.[6] Thus, there was evidence from which the jury could conclude that Kuklane paid the bills. Additionally, his injuries and the necessity of a lawyer to defend him were directly related to the Defendants' illegal arrest and the events sur rounding that illegal arrest. Finally, Kuklane testified that his attorney had to appear in court with him on three occasions, and that he was charged with a long list of offenses, thus, the jury could reasonably determine, based on the evidence, whether $3500 was reasonable. Hence, Kuklane established a prima facie case as to his damages, and the burden shifted to the Defendant to challenge the amounts.
 
 
 16
 The record before us includes no indication that the Defendants made any attempt to challenge Kuklane's assertions of his cost through cross-examination or the introduction of contradictory evidence. Reviewing the findings under the clearly erroneous standard, the jury's grant of forty-five dollars was not unreasonable for a prescription. As to the legal expenses award, the jury reduced Kuklane's statement of his legal expenses by $1000, thus showing that they weighed the reasonableness of Kuklane's costs. Hence, the jury's findings as to the damage awards were not clearly erroneous.
 
 
 17
 Therefore, we affirm the jury verdict against Whittington and Brannock. We deny Whittington's motion for oral argument and dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 There were other persons in the condo besides Kuklane and Jordan
 
 
 [2]
 Marijuana belonging to another tenant was found in the attic bedroom
 
 
 [3]
 Appellants do not challenge the liability finding against Officer Brannock on appeal
 
 
 [4]
 Whittington testified at trial that judges were available twenty-four hours for warrant requests, and that he knew about John Doe warrants, issued with only a description of the perpetrator and the place
 
 
 [5]
 Whittington asserts that because Welsh dealt with a nonjailable offense it can not be applied to clearly establish a right since in the present situation the offense was punishable by jail time. However, the mere fact that the violated right has not been specifically recognized by any court does not mean that it is not clearly established. Pritchett, 973 F.2d at 314
 
 
 [6]
 The submission of an unitemized bill and testimony has been found sufficient to satisfy the prima facie burden. See Nunan v. Timberlake, 85 F.2d 407, 410 (D.C.Cir.1936). Thus, Kuklane's testimony as to his costs, although not accompanied by a bill, should be enough