**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BONNIE VELASCO; JAMIE VELASCO;
DRU VELASCO, by and through her
Mother, Bonnie Velasco; DARREN
VELASCO, by and through his
Mother, Bonnie Velasco,

Plaintiffs-Appellants,

v.

WILLIAM F. FAIRALL,
Defendant-Appellee.

No. 96-2448

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CA-94-282-DKC)

Submitted: December 9, 1997

Decided: February 6, 1998

Before WIDENER, HALL, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Matt P. Lavine, College Park, Maryland, for Appellants. Daniel Karp,
Kevin Karpinski, ALLEN, JOHNSON, ALEXANDER & KARP,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bonnie Velasco filed suit pursuant to 42 U.S.C.§ 1983 (1994), on behalf of herself and her minor children against City of Laurel Police Officer William F. Fairall. She alleged that he violated their Fourth Amendment rights by mistakenly ordering an Emergency Response Team ("ERT") into their house which conducted an unreasonable search. Velasco further alleged loss of consortium as a result of the constitutional violations. This appeal arises from the district court's order of summary judgment in favor of Fairall on all claims. We affirm.

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We view the facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The record discloses that Fairall was responsible for the execution of a search and seizure warrant at 14827 Belle Ami Drive. After briefing with the ERT, Fairall drove by the target residence, with the understanding that it was the sixth door in from the end of a townhouse row and near a hexagonal window. After identifying a residence fitting that description, Fairall positioned himself near the perceived target residence and attempted to verify with the ERT leader that 14823 was the correct number of the target residence. Due to a misunderstanding, however, Fairall took the ERT leader's response to his verification request as confirmation that 14823 was the correct residence.

The ERT entered the Velasco residence, located at 14823 Belle Ami Drive, at approximately 10:30 p.m. At the time, Velasco and her

2

minor children were sleeping. Velasco awoke hearing loud noises and observed three men wearing masks and carrying firearms enter through the front door. While running to her daughter's room to protect her, she noticed one of the intruders enter her son's room. The men left after realizing they entered the wrong residence.

Fairall entered the Velasco residence and identified himself and the other men as police officers executing a search warrant for a different residence. He apologized for the intrusion and for mistakenly entering her home. Fairall secured the front door and assured Velasco that she would be reimbursed for any damages.

Velasco first maintains that Fairall's action in mistakenly sending the ERT into her home violated her Fourth Amendment rights. The district court awarded summary judgment to Fairall on the ground that he was entitled to qualified immunity without addressing whether the Velascos' Fourth Amendment rights were violated. We review de novo the district court's grant of summary judgment based on a finding of qualified immunity. See Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992).

Police officers sued under 42 U.S.C. § 1983 are not entitled to qualified immunity if, in performing discretionary functions, they engage in conduct that violates "`clearly established constitutional rights of which a reasonable person would have known.'" Pritchett, 973 F.2d at 312 (quoting Harlow v. Fitzgerald , 457 U.S. 800, 818 (1982)). The factors to be considered in ruling on a qualified immunity defense are (1) identification of the specific right allegedly violated; (2) whether the right was clearly established at the time of the alleged violation; and (3) if so, whether a reasonable person in the officer's position would have known that his actions would violate that right. Id. "The tolerance . . . accorded by the qualified immunity defense to `good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection to `all but the plainly incompetent or those who knowingly violate the law,' . . . in order to avoid undue inhibitions in the performance of official duties." Id. at 313 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). A police officer is entitled to qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. See Shaw v.

3

Stroud, 13 F.3d 791, 801 (4th Cir. 1994). The Fourth Amendment clearly provides the Velascos a right to privacy in their own home and to be secure in it. See Maryland v. Garrison, 480 U.S. 79, 86 (1987). The reasonableness of the officer's mistake in executing the warrant depends upon whether it was "objectively understandable and reasonable" and whether "the officer['s] conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." Id. at 88-89.

Here, Fairall drove by the target residence and later identified the residence based on the description he received. He attempted to verify the address but due to miscommunication erroneously assumed the response as confirmation. Because Fairall took reasonable steps to ensure that the ERT entered the correct residence and a reasonable officer under similar circumstances would believe he was acting lawfully, Fairall is entitled to qualified immunity. We affirm summary judgment on this claim.

Velasco also maintains that Fairall is liable under 42 U.S.C. § 1983 for ERT's unreasonable conduct. Because there is no evidence that Fairall was personally involved in the actual search of the home, only supervisor liability can lie. See Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990). Supervisor liability under 42 U.S.C. § 1983 may be imposed when (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw, 13 F.3d at 799.

In the instant case, there is neither allegation nor evidence that the ERT engaged in similar conduct in the past much less that it was widespread. As such, there is no evidence that Fairall was aware of ERT's conduct or that he demonstrated inaction in the face of widespread abuses by the ERT. See id. Hence, the district court properly granted summary judgment on the claim of supervisor liability, concluding that even if the ERT's conduct violated the Velascos' Fourth Amendment rights, Fairall could not be held responsible under a

4

supervisor liability theory. Because Fairall is not liable to the Velascos for ERT's mistaken entry into their home and their subsequent search, the district court properly granted summary judgment on the loss of consortium claim.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED