**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HAROLD WILLIAMSON,
<u>Plaintiff-Appellant,</u>

v.

THOMAS P. COPPINGER; DAVID WASLO
SHARP; JASON MERSON, All of the
above individually and as a State
Trooper for the State of Maryland;
VALERIE SHARP,                                                  No. 97-1311
<u>Defendants-Appellees,</u>

and

GUY E. GUYTON; ROBERT L.
SCRUGGS, All of the above
individually and as a State Trooper
for the State of Maryland,
<u>Defendants.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-95-1281-L)

Submitted: June 2, 1998

Decided: August 31, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Byron L. Warnken, Joe Freeman Shankle, LAW OFFICES OF BON-NIE L. WARNKEN, Baltimore, Maryland, for Appellant. J. Joseph Curran, Jr., Attorney General of Maryland, Andrew H. Baida, Assistant Attorney General, Margaret Witherup Tindall, Staff Attorney, Baltimore, Maryland; Richard M. Kastendieck, Assistant Attorney General, Pikesville, Maryland; Randolph Carl Knepper, LEVIN & GANN, P.A., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Harold Williamson appeals from the district court's order granting the Defendants' motions for summary judgment on his complaint filed pursuant to 42 U.S.C. § 1983 (1994).[1] Finding no reversible error, we affirm.

In late February 1992, Defendant Valerie Sharp reported to Maryland State Police ("MSP") that there were at least three attempts to break into her home the previous evening while she was home alone.[2] She also reported receiving anonymous phone calls later in the evening, from someone who disguised his voice, referring to the attempted break-ins, threatening to kill her and her husband, and threatening to sexually assault her. During the initial interview, the trooper taking the report asked Valerie and David Sharp to identify anyone who might have a motive to harm them. Although Williamson

_____

[1] Williamson also raised several state law claims in his complaint. However, he does not appeal the district court's disposition of these claims.
[2] Valerie Sharp is married to Defendant MSP trooper David Sharp.

was identified as one of Valerie Sharp's former boyfriends, both Sharps stated that they did not think he was responsible for the phone calls or attempted break-ins.[3] MSP investigators went to the Sharps' home and retrieved approximately twenty-six latent fingerprints from the outside of the home.

Within a few days, investigators identified approximately a dozen potential suspects, including Williamson.[4] Fingerprints for most of the suspects were available through the criminal justice system. Williamson's fingerprints were not available through this system, and Coppinger and Merson requested them from the DEA.[5] In response to DEA questions, Coppinger and Merson discussed the nature of their investigation and stated that they were requesting fingerprints to eliminate potential suspects.

Shortly after receiving the request for his fingerprints, the DEA notified Williamson that his appointment was on hold and that the DEA was conducting another investigation into his background as a result of the MSP investigation. DEA agents interviewed the Sharps, Coppinger, and Williamson. After conducting its investigation, the DEA rescinded Williamson's appointment.

The Sharps reported several other instances of harassment over the next several months. Eventually, Coppinger became concerned about

_____

[3] Valerie Sharp and Williamson dated for approximately four years until Valerie Sharp ended the relationship. Williamson had recently received an appointment as a special agent with the Drug Enforcement Administration ("DEA") and was scheduled to report for basic training in March. Both Sharps initially stated that they did not think Williamson would jeopardize his appointment by committing the acts in question.
[4] Approximately four days after the initial interview, Defendants Coppinger and Merson conducted a more in-depth interview of Valerie Sharp. During this interview, Valerie Sharp recounted several instances of unwanted contact with Williamson after their break-up.
[5] Contrary to Williamson's assertions, investigators requested fingerprints for nine other suspects prior to requesting Williamson's. Fingerprints for another suspect were requested later in the investigation. One of the sets of fingerprints requested belonged to a Howard County police officer who had had a disagreement with David Sharp.

inconsistencies in the reports made by Valerie Sharp, and he asked her to take a polygraph examination. The test indicated that Valerie Sharp was deceptive as to at least one reported instance of harassment. Ultimately, the investigation was terminated due to concerns about Valerie Sharp's credibility. No charges were ever brought against any suspect, and MSP officials notified the DEA that Williamson was no longer a suspect.

In his complaint, Williamson alleged that the Defendants conspired to deprive him of his employment opportunity with the DEA. The district court granted the Defendants' motions for summary judgment on the grounds that the MSP Defendants were entitled to qualified immunity and that there was no evidence that Valerie Sharp conspired with the other Defendants.**6**

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, we must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). We review a grant of summary judgment de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). In the present case, we find that the district court properly granted Defendants' motions.

Police officers performing discretionary functions are entitled to qualified immunity from suits filed pursuant to§ 1983, unless they "engaged in conduct that violates clearly established constitutional rights of which a reasonable person would have known." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992) (citation omitted). The reviewing court must focus on the objective reasonableness of the officers' actions under the circumstances present at the time of the alleged violation. See Torchinsky v. Siwinski , 942 F.2d 257, 261 (4th Cir. 1991). Williamson alleges that Defendants knew or should have known that contacting the DEA for his fingerprints and informing the

_____

**6** Such a conspiracy could make her a state actor for purposes of § 1983. See Dennis v. Sparks, 449 U.S. 24, 27 (1980).

4

DEA that he was a potential suspect in a criminal investigation would result in his being denied appointment as a special agent. We disagree.

MSP investigators were faced with an individual who was making serious threats against a state trooper and his wife and who obviously knew where the victims lived, knew their telephone numbers (including Valerie Sharp's cellular phone number), and had a basic knowledge of their daily activities. We find that the district court correctly concluded that no reasonable juror could fail to find that the actions of the MSP investigators were objectively reasonable. While David and Valerie Sharp may not have initially suspected Williamson, we find, and Williamson concedes, that it was reasonable for investigators to suspect a former boyfriend in a stalking case. We further find that it was not unreasonable for investigators to request Williamson's fingerprints from the DEA. Since most of the other suspects had criminal records, their fingerprints were readily available. There was no evidence that Williamson had a criminal record, however, so requesting his fingerprints from the DEA was the most efficient method of obtaining them.[7] In addition, the record shows that MSP investigators only informed the DEA that Williamson was a potential suspect in response to DEA questions, and even then they told the DEA that the request was for the purpose of eliminating potential suspects.[8]

Finally, we find that Williamson failed to show that Valerie Sharp conspired with the other Defendants, making her a state actor under § 1983. Williamson's allegations are highly speculative; supported only by the fact that Valerie Sharp reported incidents of harassment and because the investigation was eventually terminated due to concerns about her credibility and her reluctance to cooperate with officials.[9]

_____

[7] Williamson alleges that Coppinger and Merson should have asked him to come into their office and be fingerprinted. We disagree and find that a reasonable officer in Defendants' position might not want to alert a potential suspect that he was under investigation. See Torchinsky, 942 F.2d at 263-64.

[8] Since we find that Defendants' actions were objectively reasonable, we decline to address the issue of whether Williamson had a clearly established constitutional right in his potential employment with the DEA.

[9] **See Lugar v. Edmonson Oil Co.** , 457 U.S. 922, 939 n.21 (1982) (merely furnishing information to police is insufficient to establish a con-

5

Williamson also relies on the fact that Valerie Sharp stated that she did not think he was involved during the first interview, but changed her opinion during the second interview. Despite his conclusory allegations, Williamson provides no evidence to support his theory that Defendants met between the two interviews to get Valerie Sharp to change her story. To the contrary, the record shows that the second interview was simply more comprehensive than the first. Moreover, it was Coppinger who began to doubt Valerie Sharp's credibility, asking her to take a polygraph examination, and he was the one who ultimately recommended that the investigation be terminated.

Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

spiracy, converting a private citizen into a state actor for purposes of § 1983).

6