Earl W. CARTER, Jr.

v.

D. JESS, et al.

No. WMN–01–1338.

United States District Court,
D. Maryland.

Dec. 18, 2001.

laws, against Baltimore County and Howard County police officers, and against the counties themselves. Before the Court are: Defendant Baltimore County's Motion to Dismiss (Paper No. 3) and Motion to Bifurcate and Stay Discovery (Paper No. 4); Defendant Officer Boone's Motion to Dismiss Counts V through VII and Counts X through XVIII (Paper No. 6) and Motion for Summary Judgment (Paper No. 18); Defendants Officer D. Jess and Officer C. Waite's Motion to Dismiss (Paper No. 12) and Motion for Summary Judgment (Paper No. 17); and Plaintiff's Motion to File Out of Time (Paper No. 21). The motions are fully briefed and ripe for decision.

Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants Boone, Jess, and Waite will be granted summary judgment as to Plaintiff's § 1983 claims; Plaintiff's state law claims will be dismissed; and the § 1983 claims against the counties will be dismissed.

Emanuel P. Summerfield, Owings Mills, MD, for plaintiff.

Jeffrey Grant Cook, Assistant County Attorney, Towson, MD, for D. Jess, C. Waite, Baltimore County, defendants.

Rebecca A Laws, Assistant County Attorney, Ellicott City, MD, Barbara M. Cook, Howard County Office of Law, Ellicott City, MD, for B. Boone, defendant.

## MEMORANDUM

NICKERSON, District Judge.

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983, and various state

### I. BACKGROUND

This lawsuit arises out of events that occurred on May 5, 2000. On that day, Plaintiff arrived at the Home Depot store in Catonsville, Maryland, to purchase building supplies. In the parking lot in front of the store, Plaintiff noticed several police officers and vehicles from the Baltimore County and Howard County police departments.[1] Plaintiff also saw that at least two of the entrances to the Home Depot were blocked off, and a portion of the parking lot was cordoned off with yellow police "crime scene" tape. Plaintiff

---

1. The police officers had recently been involved in a high-speed car chase of an armed suspect that came to an end in the parking lot. Plaintiff had nothing to do with those events.

parked his car and walked towards Home Depot.

At this point, the facts come into dispute. According to Plaintiff, he was directed by police as to which path to take to the store, and he did not pass through any yellow taped areas. Complaint at ¶ 14. The police report by Defendant Officer Jess, however, indicates that Plaintiff crossed into the crime scene on his way to the store, and was advised to move outside it, which he did. Mot. for Summ. J. at Ex. 4.

After exiting the store, Plaintiff claims that he walked back towards his car without entering the crime scene area. Plaintiff was walking with his head down, looking into his bag of purchases. According to Plaintiff, he was "suddenly shoved and accosted by a Howard County Police Officer, believed to be Officer Boone." Complaint at ¶ 16. Plaintiff alleges that Officer Boone then told him, in "an extremely threatening" manner, that he was in a restricted area and needed to leave.[2] At that point, Plaintiff alleges that Baltimore County Officer Jess, who was standing nearby, told Plaintiff to "shut the f* * * up and go to your g* *d* * * car." Complaint at ¶ 19.

Plaintiff claims that he complied with Officer Boone's order and left the area in the direction in which Officer Boone had pointed. As Plaintiff was walking away, Officer Jess allegedly told Plaintiff, "If you look at me I am going to f* * * you up because I want to f* * * you up anyway." Complaint at ¶ 22. Plaintiff responded, "You cannot talk to me that way." Id. at ¶ 23. While continuing to walk away,

Plaintiff turned back to Officer Boone and said, "If you wanted me to get out [sic] the area, all you had to do was ask me, you did not have to put your hands on me." Pl.'s Dep. at p. 82, 11. 2–4. According to Plaintiff, he was then accosted by Officers Jess and Waite, and moments later, by Officers Boone and Craig as well. Plaintiff claims that his "arms and back were twisted . . ., and Plaintiff was kneed in his tailbone and then again kneed in the area of his kidneys.[3] Plaintiff's body and limbs were twisted and he was placed in an extremely awkward position and handcuffed so tightly that circulation to his hands was cut off." Complaint at ¶ 25. Plaintiff also states that as he was being arrested, Officer Waite commented that Plaintiff "must have stolen" the items in Plaintiff's Home Depot shopping bag. Id. at ¶ 27.

Defendant police officers offer a different version of events. According to Officer Jess's report, Plaintiff again crossed into the crime scene upon exiting the Home Depot. Officer Boone, in an affidavit, testifies that Plaintiff was in the crime scene and that Officer Boone extended his hand to block the path of Plaintiff, who then "began swearing and warning me not to touch him." Boone Aff. at ¶¶ 5–6. Officer Jess states in his report that Plaintiff refused to obey several orders by Baltimore County and Howard County police to leave the crime scene area. Plaintiff then moved outside the crime scene area, and "as he walked he continued to turn back and make verbal comments to me that drew the attention of several bystanders." Mot. for Summ. J. at Ex. 4. Officer Jess states that he took Plaintiff by the arm and told him he was under arrest, when

---

2. In some of his pleadings, Plaintiff alleges that this initial encounter was with Officer Jess of the Baltimore County police, but in his deposition and complaint Plaintiff identifies the officer as Howard County Officer Boone.

3. Plaintiff has a transplanted kidney. Plaintiff claims that he was wearing a medical bracelet or anklet on the day in question, but has made no claims that he verbally alerted officers to his medical condition.

**538**

Plaintiff pulled away and "had to be taken to the ground by myself and [Officer Waite] in order to arrest him." *Id.*

Present during Plaintiff's arrest was at least one camera crew from a local television news station, who had been at the location because of the earlier (and unrelated) police car chase that had ended in the Home Depot parking lot. A video tape from the news station has been submitted to the Court as evidence. It shows the moments immediately prior to Plaintiff's arrest, the arrest itself, and few seconds after the arrest. The tape does not show Plaintiff exiting the Home Depot, nor his initial confrontation with Officers Boone and Jess.

Plaintiff was charged with: (1) obstructing and hindering a police officer, (2) resisting arrest, (3) disorderly conduct, and (4) failure to obey a reasonable and lawful police order.[4] Plaintiff appeared for his trial date on the charges on August 17, 2000, but the matter was postponed because the officers were not present. When Plaintiff appeared for the new trial date, the State's Attorney entered a *nolle prosequi* as to all charges.

On May 7, 2001, Plaintiff filed a 19–count complaint against Defendant officers, Baltimore County, and Howard County, seeking damages in the amount of $1 million. Counts 1 through 7 are captioned as claims against the individual officers under 42 U.S.C. § 1983, although they specifically allege violations of state tort law and the Maryland Declaration of Rights, in addition to federal constitutional provisions.[5] Count 8 brings a § 1983 claim against Baltimore County; Count 9 brings one against Howard County. Counts 10 through 12 allege violations of Plaintiff's rights under the Maryland Declaration of Rights by the individual officers. Finally, Counts 13 through 19 allege claims "under" the Local Government Tort Claims Act (LGTCA). Md.Code Ann., Cts. & Jud. Proc. § 5–304. The LGTCA, however, does not give rise to a cause of action but instead establishes procedural requirements for those who sue local governments or their employees for unliquidated damages, as here. Accordingly, the Court will treat Counts 13 through 19 as if they allege violations of the common law torts named therein.[6]

## II. LEGAL STANDARDS

### A. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir.1999). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

4. In his Complaint, Plaintiff also alleges that Officer Waite, who drove Plaintiff to the police station, unnecessarily slammed on the brakes, causing Plaintiff to crash into the metal grid of the police car. Plaintiff also states that he was refused medical assistance and the opportunity to place a telephone call, and was confined for eight hours before being released. Complaint at ¶¶ 28–31. Although Plaintiff makes these allegations of post-arrest mistreatment in the statement of facts in his complaint, he does not allege that they form the basis of any constitutional claims against the officers.

5. The propriety of specific claims contained in the complaint will be addressed in more detail in the discussion of the motions to dismiss, below.

6. Counts 13 through 19 allege assault and battery, false arrest, false imprisonment, negligence, infliction of emotional distress, defamation, and malicious prosecution.

which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, in ruling on the motion, the Court should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser–Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1314 (4th Cir.1995), *vac. on other grounds,* 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996).

### B. Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty,* 818 F.2d at 1128 (citing *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986)).

## III. DISCUSSION

### A. Motions to Dismiss [7]

1. The § 1983 Claims against individual officers (Counts 1–7)

Section 1983 permits a plaintiff to recover damages when an individual, acting under the color of state law, violates a federally recognized right of the plaintiff. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In Counts 1 through 7 of the Complaint, however, Plaintiff seeks to base his § 1983 claims on Defendant Officers' alleged violations of state tort law, specifically: assault and battery, false arrest, false imprisonment, negligence, infliction of emotional distress, defamation, and malicious prosecution.[8] Defendants argue that insofar as the § 1983 claims rely on state law violations, they fail to state a claim and should be dismissed. Defendants also argue that

---

**7.** In June, 2001, Defendants Jess and Waite, Defendant Boone, and Defendant Baltimore County each submitted a motion to dismiss most of the counts in the complaint. Plaintiff filed timely responses to the motions of Defendant Boone and Baltimore County. Plaintiff's response to the motion of Defendants Jess and Waite, however, was not filed until November 13, 2001, when Plaintiff submitted a motion to file out of time, stating that Plaintiff's counsel did not recall ever receiving Defendants' motion. Because the Court had not yet ruled on Defendant Jess' and Waite's motion, and there appears to be no prejudice to Defendants by doing so, the Court will grant Plaintiff's motion to file out of time.

**8.** Within each count, Plaintiff also mentions that the officers' conduct violated his 4th and 14th Amendment rights. Plaintiff does not explicitly allege these violations as bases for his § 1983 claims, however.

Counts 1 through 3, alleging assault and battery, false arrest, and false imprisonment, implicate the Fourth Amendment right to be free from unreasonable searches and seizures, and accordingly, should be construed as allegations of excessive force and arrest without probable cause. The Court agrees.

Although assault and battery are common law causes of action, when they are asserted against a police officer in the line of duty, a different legal standard must be used. Put simply, the use of force by a police officer violates the Fourth Amendment if the force used was excessive under objective standards of reasonableness. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Therefore, Plaintiff's assault and battery claim in Count 1 is best construed as a § 1983 claim based on the use of excessive force in violation of the Fourth Amendment. Likewise, although Plaintiff's claims of false arrest and false imprisonment state common law causes of action, they implicate Plaintiff's Fourth Amendment right to be free from arrest without probable cause. *See, Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir.1986) (holding that § 1983 action lies for warrantless arrest without probable cause). Accordingly, Counts 2 and 3 will be construed as a single § 1983 claim on that basis.

The other state law claims that Plaintiff asserts as bases for his § 1983 action, however, cannot survive. As to Count 4, malicious prosecution is a state law tort that does not constitute a federally protected right. *See, Lambert v.*

*Williams*, 223 F.3d 257, 260 (4th Cir.2000). Count 5 must be dismissed because a state actor may not be held liable under § 1983 for negligent acts.[9] *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Third, although emotional damages are available under § 1983, a claim of infliction of emotional distress such as Count 6 cannot form the basis of a § 1983 action because there is no constitutionally protected interest at stake. *See, Albright v. Oliver*, 510 U.S. 266, 270, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Similarly, Plaintiff's defamation claim must fail because the United States Supreme Court has determined that the interest in reputation protected by state defamation laws does not constitute a federally protected interest actionable under § 1983. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, *rhg. denied*, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976).[10] Therefore, Counts 4 through 7 will be dismissed for failure to state a claim upon which relief can be granted. *See*, Fed. R.Civ.P. 12(b)(6).

### 2. The § 1983 claim against Baltimore County (Count 8)

Plaintiff asserts a § 1983 claim against Baltimore County based on a theory of municipal liability for the actions of Officers Jess and Waite. The county's liability is derivative of any liability of those two officers. *Vathekan v. Prince George's County*, 154 F.3d 173, 180–81 (4th Cir. 1998). Because this Court will grant summary judgment to Officers Jess and Waite, see *infra*, no viable claim can be asserted

---

**9.** To the extent that Plaintiff's negligence claim also alleges intentional conduct by Defendants, it will be incorporated into the Fourth Amendment claim deemed to be the basis of Plaintiff's § 1983 action.

**10.** Although, as Plaintiff notes, some circuit courts have allowed defamation to form the basis of § 1983 actions in certain circumstances, particularly where business good will is implicated, those cases are not applicable here.

against Baltimore County. Therefore, Count 8 must be dismissed.[11]

3. The state law claims (Counts 10–19)

In Counts 10 through 19, Plaintiff alleges that the individual officer defendants violated his rights under the Maryland Declaration of Rights, as well as the same common law torts alleged in Counts 1 through 7. Defendants have moved to dismiss these counts on the grounds that Plaintiff failed to comply with the notice provision of the Local Government Tort Claims Act (LGTCA). Md.Code Ann., Cts. & Jud. Proc. § 5–304. The LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." *Id.* at § 5–304(a). Notice is to be in writing and must state the time, place, and cause of the injury. *Id.* at § 5–304(b)(3). The statute also sets forth acceptable means of providing notice to county officials. *Id.* at § 5–304(b).

■ Maryland courts have held that notice is a condition precedent to the right to maintain an action for damages against local government employees. *Bibum v. Prince George's County,* 85 F.Supp.2d 557, 564 (D.Md.2000) (*citing Grubbs v. Prince George's County,* 267 Md. 318, 320–21, 297 A.2d 754 (1972)). Compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action. *Id.* (*citing Madore v. Baltimore County,* 34 Md.App. 340, 342, 367 A.2d 54 (1976)). The notice requirement may be waived if the plaintiff can show good cause for failure to comply, and if the defendant cannot demonstrate prejudice therefrom. Md.Code Ann., Cts. & Jud. Proc. § 5–304(c).

■ In the present case, there is no dispute that the provisions of the LGTCA apply to those claims based on the state constitution and state tort law. Plaintiff concedes that he did not comply with the notice requirement *per se.* Rather, Plaintiff argues that the requirement should be waived in his case either because Plaintiff "substantially complied" with the requirement, or because Plaintiff had good cause for not complying.

Courts have accepted "substantial compliance" in lieu of technical compliance if the plaintiff fulfills the purpose of the statute by apprising the proper local officials that plaintiff is pursuing a claim. *See, Loewinger v. Prince George's County,* 266 Md. 316, 317–18, 292 A.2d 67 (1972). For example, a plaintiff who sent notice by ordinary mail, rather than in person or by registered mail, to the appropriate county officials who received it within the statutory period, was found to have substantially complied. *Jackson v. Bd. of County Commissioners,* 233 Md. 164, 195 A.2d 693 (1963). In Plaintiff's case, however, no notice of any kind was ever sent to officials until Plaintiff filed his Complaint just over one year after the alleged date of injury-twice the length of the statutory period.

Without pointing to any steps Plaintiff took during that year to inform county officials of his lawsuit, Plaintiff argues that "[i]t can readily be assumed that the County and its police department would be aware" of Plaintiff's allegations, and that the county "may have" conducted its own investigation into the matter. Pl.'s Opp. to

---

11. In Count 9, Plaintiff asserts a § 1983 municipal liability claim against Howard County as well. At this time, Howard County has not been served and has not filed any motions. Because this Court finds in favor of Howard County Police Officer Boone, however, Plaintiff will be unable to prevail on its claim against Howard County. *See, Vathekan* at 180–81. The Court will therefore dismiss Count 9 *sua sponte.*

Boone's Mot. to Dismiss at 10–11. Assumptions as to what the county may or may not have known about Plaintiff's lawsuit are not relevant to the Court's inquiry, however. The Court finds that Plaintiff in no way substantially complied with the notice requirement.

Plaintiff's argument that notice should be waived for "good cause" meets a similar fate. "[T]he test for [the] existence [of good cause] is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Madore*, 34 Md.App. at 345, 367 A.2d 54 (*quoting Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370 (1948)). Plaintiff has failed to present any evidence of diligence in pursuing his claims, nor has he demonstrated how waiting a full year to file a lawsuit meets this standard. Therefore, the Court finds that good cause does not exist for waiving the LGTCA's notice requirement.[12] Accordingly, Counts 10 through 19 must be dismissed.

### B. Officer Boone's Motion for Summary Judgment

The counts remaining against Officer Boone allege that he used excessive force against Plaintiff and arrested him without probable cause. Officer Boone has moved for summary judgment on the basis of qualified immunity. For the following reasons, the Court finds that Officer Boone's motion should be granted.

Government officials, including police officers, are entitled to qualified immunity for discretionary acts performed in connection with their public service, as long as they do not violate "clearly established" rights of which a reasonable officer would know. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The inquiry for the court is whether the officer's actions were objectively reasonable under the existing circumstances and in light of existing law. *Id.* The issue of qualified immunity is appropriate for summary judgment because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

#### 1. Excessive Force

It is well established that claims of excessive force in the context of an arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. The United States Supreme Court recently made clear, however, that the qualified immunity inquiry on an excessive force claim is separate from the Fourth Amendment analysis. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001). The proper inquiry is whether a reasonable officer in the defendant's position would have believed that the amount of force used was lawful under the circumstances. Even if the belief was mistaken, as long as it was reasonable and not in violation of clearly established law, the officer is entitled to immunity. *Id.*

Plaintiff alleges two instances in which Officer Boone allegedly used physical force against him: first, in the initial encounter as Plaintiff was walking away from the

---

**12.** Having found that Plaintiff has failed to demonstrate good cause, the Court need not address the issue of whether there was prejudice to Defendants.

Home Depot store and, according to Officer Boone, entered the crime scene area; and second, when Officer Boone assisted the Baltimore County officers in arresting Plaintiff.

█ Since Plaintiff's first encounter with Officer Boone was not captured on video tape, the Court must conduct its inquiry by examining the facts in the light most favorable to Plaintiff. In his deposition, Plaintiff describes the encounter as follows:

> I walked alongside the [crime scene] tape that was sealing off the mangled car. And I saw another police officer, and I nodded my head in acknowledgment of seeing him. And I proceeded to walk up the hill, and I was looking—I believe I was looking in my bag or just making sure that everything was there.
>
> And then out of the clear blue, this officer came and pushed me and hit me in my shoulder. And because I was looking down as I was coming up [the hill] I could see that it was police attire that he had on. And I immediately was apologetic because I thought that I may have done something wrong. And I looked up at him startled, and he said, "You are in a restricted area." And I went into my mind's eye, because it was ambiguous to me as to how I got into the area because I didn't lift any tape or anything. And he—I said—I asked him, I said, "How do I get out [sic] the area?" And he—he pointed, you know, in the direction where I was to walk.

Pl.'s Dep. at 10–11.

By Plaintiff's own account, he was walking with his head down, ostensibly not watching where he was going. In Plaintiff's reply memorandum, he concedes that "[i]f he crossed over into a crime scene area, it was not intentional." Pl.'s Reply Mem. at 4. Plaintiff also does not allege any physical harm or injury from the "push" and/or "shove" received from Officer Boone. Instead, the contact appears to have gotten his attention so that Officer Boone could direct him out of the area. Even if, as Plaintiff alleges, the crime scene was poorly marked, it was not unreasonable for the officer to attempt to cause Plaintiff to leave the areas of a recently committed crime. Plaintiff has not identified any case demonstrating a clearly established rule prohibiting Officer Boone from using minimal physical force to get a pedestrian's attention and direct him out of a secured area. The fact that Officer Boone may have done so with an "extremely threatening, hostile, and unusually severe" tone of voice, does not raise the officer's conduct to the level of a constitutional violation. Complaint at ¶ 17.

█ With regard to Plaintiff's second instance of physical contact by Officer Boone, the video tape reveals that Officer Boone's involvement in Plaintiff's arrest was extremely limited. Officer Boone, along with another Howard County officer,[13] does not join in the arrest until Officers Jess and Waite have taken Plaintiff to the ground, face down, and are attempting to handcuff him while Plaintiff appears to be struggling.[14] When Officer Boone enters the scene, he kneels near Plaintiff's head and places one or both

---

**13.** Presumably this other officer is Howard County Police Officer G. Craig, who is named as a defendant in the Complaint, but apparently has never been served in this matter.

**14.** Plaintiff's own testimony tends to show that he struggled against or resisted the officers arresting him: "They balled me up on the ground, and my body was in a position that is not even fair for any human to be put in. I had to force my way-get them off of me so I could be comfortable. I was in such pain." Plaintiff Dep. at 48.

hands on Plaintiff's upper back and shoulder area for several seconds. At most, the video tape shows that the pressure Officer Boone applied to Plaintiff's body was sufficient to prevent Plaintiff from rising up while he was being handcuffed.[15] Officer Boone did not assist in raising Plaintiff back up to a standing position. Once Plaintiff is handcuffed and upright, Officer Boone retreats off camera and away from Plaintiff.

The *Graham* decision sets forth factors relevant to an excessive force analysis, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. The *Graham* court goes on to note that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Given Officer Boone's particular circumstances-that of seeing fellow officers attempting to arrest a struggling suspect whom Officer Boone had moments earlier had to direct out of a crime scene-and the minimal amount of force he used on Plaintiff, as evidenced by the video tape, the Court finds that Officer Boone's use of force during the arrest was objectively reasonable. Plaintiff offers no case law to suggest otherwise.

### 2. Probable Cause for Arrest

Plaintiff alleges that Officer Boone should be held liable for his role in Plaintiff's arrest, which allegedly was unsupported by probable cause. As mentioned above, however, the video tape reveals that Officer Boone was not involved in the initial moments of Plaintiff's arrest, and in fact did not participate in it until Plaintiff is face down on the ground, with Officers Jess and Waite attempting to place handcuffs on him. There is no evidence that Officer Boone, who works for Howard County, was involved in the decision to arrest Plaintiff, which was made by officers of Baltimore County. Furthermore, Officer Boone testifies in his affidavit that his attention was elsewhere when Plaintiff was first placed under arrest by Officers Jess and Waite. When Officer Boone's attention returned to Plaintiff, he saw "two Baltimore County officers [Jess and Waite] who appeared to be attempting to take him into custody. The man [Plaintiff] was resisting and struggling with the officers as they were trying to take him to the ground." Boone Aff. at ¶ 5. Plaintiff has not offered any evidence to controvert this testimony.

Because Officer Boone did not make the decision to arrest Plaintiff, and because he assisted other officers in an arrest already in progress, the inquiry before the Court is limited to whether Officer Boone's decision to assist in the arrest was objectively reasonable in light of the circumstances and existing law. *See, Saucier.* Plaintiff has cited no authority for the proposition that an officer must make an independent assessment of probable cause before assisting other officers with what appears to be a difficult or potentially dangerous arrest that is already underway. Indeed, such a requirement could yield perilous results for officers whose colleagues are deterred from assisting them.[16] Plaintiff asserts in-

---

**15.** Despite Plaintiff's assertion that he felt as if Howard County officers "stomped" on his back, the video tape shows that Howard County officers did not "stomp," hit, or kick Plaintiff in any way while Plaintiff was on the ground. A Baltimore County officer (Jess or Waite) did knee Plaintiff in the upper buttocks before Plaintiff was brought to the ground.

**16.** Certainly, however, officers with *knowledge* that their fellow officers are engaged in

stead that because of the short time between Officer Boone's initial encounter with Plaintiff, and Plaintiff's arrest by Officers Jess and Waite, that "Defendant Boone must have known that at no time during this incident was Mr. Carter a candidate for a disorderly conduct charge." Pl.'s Reply at 6.

Plaintiff's argument fails to address the fact that Officer Boone did not witness Plaintiff's conduct immediately prior to the arrest, and had no personal knowledge of the arresting officers' basis for the arrest. Officer Boone's liability turns not on whether the arrest was actually based on probable cause, but rather, "what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Saucier* at 2159. The video tape shows that at the point at which Officer Boone (and the other Howard County officer) joined in the arrest, it would have been objectively reasonable for Officer Boone to believe that Officers Jess and Waite needed his assistance.[17]

### C. Officers Jess and Waite's Motion for Summary Judgment

#### 1. Probable cause for the arrest

Plaintiff alleges that Officers Jess and Waite arrested him without probable cause. The officers have moved for summary judgment, claiming that as a matter of law, probable cause existed for the arrest.

Probable cause is defined as "facts and circumstances" within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). In the Fourth Circuit, "[w]hether probable cause exists in a particular situation therefore always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (citation omitted).

 Examining first the "contours of the offense," the Court notes that Plaintiff was charged with four offenses: (1) obstructing and hindering a police officer, (2) resisting arrest, (3) disorderly conduct, and (4) failure to obey a reasonable and lawful police order. Defendants argue that at the very least, they had probable cause to arrest Plaintiff for disorderly conduct.[18] Def.'s Mot. at 5. Maryland's offense of disorderly conduct states in pertinent part,

> (b) Disorderly conduct.... (2) A person may not willfully act in a disorderly manner to the disturbance of the public peace. (3) A person may not willfully

---

unlawful activity, including a wrongful arrest, should not assist in it. There is no evidence that Officer Boone had such knowledge in this case.

**17.** Plaintiff has also named as a defendant Officer G. Craig of the Howard County Police Department, alleging that Officer Craig is the other Howard County officer that assisted in his arrest. Officer Craig was never served and never filed a motion in this matter. Because Plaintiff has not alleged any liability on the part of Officer Craig that was not also

alleged against Officer Boone, the Court will *sua sponte* dismiss Plaintiff's claims against Officer Craig.

**18.** Defendants need only have had probable cause for the offense for which Plaintiff was arrested; they need not demonstrate probable cause for all other offenses with which Plaintiff was charged. *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir.2000) (*citing Arnott v. Mataya*, 995 F.2d 121, 124 n. 3 (8th Cir. 1993)).

fail to obey a reasonable and lawful order of a law enforcement officer made to prevent a disturbance to the public peace.

Md.Code. Ann. Art. 27, § 121.

When examined in the light most favorable to the Plaintiff, the sequence of events leading to Plaintiff's arrest are as follows. The crime scene was poorly marked and if Plaintiff entered into it, he did so inadvertently. Before Plaintiff had a chance to obey Officer Boone's order to leave the area, Officer Jess yelled at him to "shut the f* * * up and go to your g* *d* * * * * car." Plaintiff began walking away, but turned back to tell Officer Boone "If you wanted me to get out [sic] the area, all you had to do was ask me, you did not have to put your hands on me." Pl.'s Dep. at p. 82, ll. 2–4. Officer Jess then ran over to Plaintiff and said "You say one more word, I am going to lock you up". When Plaintiff asked "For what?" Officer Jess replied "disorderly conduct." Plaintiff began walking away, when Officer Jess said, "If you look at me I am going to f* * * you up because I want to f* * * you up anyway." When Plaintiff replied, "You can't talk to me that way", the officers grabbed his arm and attempted to put him under arrest.

According to this version of events, Officer Jess behaved in a rude, unprofessional, and overly aggressive manner. The Court would agree with Plaintiff that the officer's conduct was "hardly in keeping with the behavior, decorum, professionalism, and restraint" that the public expects from law enforcement. Pl.'s Resp. to Mot. for Summ. J. at 5. Plaintiff's words and conduct, however, demonstrate to a fair probability that he was not following lawful (though impolite) police orders to leave the crime scene area. Plaintiff concedes that he turned and criticized Officer Boone's conduct so that the officer would "learn something." Pl.'s Dep. at 169, 1. 1–2. Also, the video tape reveals that Plaintiff's demeanor toward the officers immediately prior to the arrest was not indicative of someone inclined to obey a lawful order. In response to a command by Officer Jess that sounds like, "Go to your car," Plaintiff stops his rather leisurely walk, turns to face the officer, and says something to the effect of "better just watch your mouth talking to me." Taken as a whole, Plaintiff's words and actions created probable cause that he was not obeying reasonable and lawful police orders to leave the crime scene area.[19]

## 2. Excessive Force

Because Defendants Jess and Waite have also moved for summary judgment based on qualified immunity for this count, the Court's inquiry is much the same as it was for Officer Boone. Again, the proper analysis is whether a reasonable officer in the defendant's position would have believed that the amount of force used was lawful under the circumstances. Even if the belief was mistaken, as long as it was reasonable and not in violation of clearly established law, the officer is entitled to immunity. *See, Saucier.*

 This case is unusual because the Court has been able to view Plaintiff's arrest, as it was captured on video tape.

**19.** Although discussed at length by Plaintiff, the case of *Okwa v. Harper,* 360 Md. 161, 757 A.2d 118 (2000) is not binding on this Court and is factually distinguishable from this case. In *Okwa,* the Court of Appeals of Maryland reversed a summary judgment award to police officers who arrested an airline passenger for disorderly conduct, finding that a factual question remained as to whether the passenger's conduct (an angry outburst at being refused admittance to his international flight) established probable cause. The question of probable cause was germane to Okwa's state law malicious prosecution claim.

The tape shows Officers Jess and Waite verbally confront Plaintiff, who stops, faces them, tells one officer to "watch his mouth," and slowly turns to walk away. One officer grabs Plaintiff's upper arm, and the other attempts to handcuff Plaintiff. Plaintiff attempts to pull away, twisting and turning his body to avoid the handcuffs. One officer, standing behind Plaintiff, then puts an arm around Plaintiff's chest and neck, and the two officers attempt to bring Plaintiff to his knees. As they are doing so, one officer knees Plaintiff in the upper buttocks area. Plaintiff continues to twist his body, apparently resisting the efforts to bring him to the ground.

The officers then bring Plaintiff to an awkward sitting position, yelling at Plaintiff to "get over [on his stomach]" as they go. In a couple of seconds, Plaintiff is prone on the ground, face down.[20] The Baltimore County officers have their knees and hands on his buttocks and lower back; the Howard County officers arrive on the scene and place their hands on his arms and upper back. Plaintiff is handcuffed with his hands behind his back, during which he is loudly shouting "do you all see this" to bystanders. The Baltimore County officers then lift Plaintiff to his feet by holding his upper arms and pulling him to a standing position. Plaintiff does not appear to resist standing up.

The Court finds that although this arrest is by no means gentle, the officers are entitled to qualified immunity as to the excessive force claim. The video tape shows that officers were aggressive and made inappropriate comments to the effect that Plaintiff had stolen his Home Depot purchases, although there was no evidence that he had. The video tape even shows

that Plaintiff may have experienced some degree of discomfort or pain during the arrest. It is well-established, however, that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham* at 396, 109 S.Ct. 1865. Officers are permitted to use some degree of force to effect an arrest. *Id.* Plaintiff himself concedes that he initially resisted arrest. Pl.'s Dep. at 161. The video tape reveals that Plaintiff was not punched, hit, or "stomped," as Plaintiff had initially claimed. Even if the officers used more force than necessary to effect the arrest, the Court finds that a reasonable officer in Defendants' positions would have believed that the amount of force used was lawful under the circumstances and existing law.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that: all but Counts 1 through 3 of the Complaint will be dismissed; Defendants Jess, Waite, and Boone are entitled to summary judgment as a matter of law on the remaining counts; and Baltimore County, Howard County, and Howard County Police Officer G. Craig will be dismissed from this action. A separate order will issue.

### *ORDER*

Pursuant to the foregoing Memorandum, and for the reasons stated therein, IT IS this day of December, 2001, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant Baltimore County's Motion to Dismiss all claims except for

---

**20.** Plaintiff appears to be struggling or resisting at this point as well, and concedes as

much in his deposition. *See infra* at note 13.

Count VIII (Paper No. 3) is hereby GRANTED;

2. That Defendant Baltimore County's Motion to Bifurcate and Stay Discovery (Paper No. 4) is hereby DENIED as moot;

3. That Defendant Officer Boone's Motion to Dismiss Counts V through VII and Counts X through XVIII (Paper No. 6) is hereby GRANTED;

4. That Defendant Officer Boone's Motion for Summary Judgment (Paper No. 18) is hereby GRANTED;

5. That Defendant Howard County is hereby DISMISSED from this action;

6. That Defendant Howard County Police Officer G. Craig is hereby DISMISSED from this action;

7. That Defendants Officer D. Jess' and Officer C. Waite's Motion to Dismiss (Paper No. 12) is hereby GRANTED;

8. That Defendants Officer D. Jess' and Officer C. Waite's Motion for Summary Judgment (Paper No. 17) is hereby GRANTED;

9. That Defendant Baltimore County is hereby DISMISSED from this action;

10. That Plaintiff's Motion to File Out of Time (Paper No. 21) is hereby GRANTED;

11. That this case is hereby CLOSED;

12. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

13. That the Clerk of the Court shall mail or transmit copies of this Memorandum and Order to Plaintiffs and all counsel of record.