Maurice WHITE, Plaintiff,

v.

Loudoun County Sheriff Michael L. CHAPMAN, et al., Defendants.

Case No. 1:14–cv–00848 (GBL/IDD).

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed April 6, 2015.

Robert Scott Silverblatt, K & L Gates, Washington, DC, for Plaintiff.

Carlene Booth Johnson, Perry Law Firm PC, Dillwyn, VA, Broderick Coleman Dunn, Cook Craig & Francuzenko PLLC, Fairfax, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant Loudoun County Deputy Sheriff Wade P. Phillips' Motion for Summary Judgment (Docs. 119 and 122) and Defendant Loudoun County Sheriff Michael L. Chapman's Motion for Summary Judgment (Doc. 100). Plaintiff Maurice White brought this civil action against Defendants pursuant to 42 U.S.C. § 1983 for unlawful arrest and malicious prosecution related to an August 11, 2013 traffic stop. Defendant Phillips argues in his Motion for Summary Judgment that he had probable cause to seek Mr. White's arrest and acted as a reasonably objective officer in doing so and thus is entitled to qualified immunity. Sheriff Chapman in his Motion for Summary Judgment argues that in his individual capacity, he is not strictly liable or vicariously liable for the conduct of Deputy Phillips and that even were he liable he is entitled to sovereign immunity.

There are four issues before the Court. The first issue is whether Defendant Deputy Phillips is entitled to qualified immunity from suit based on his alleged unlawful arrest and malicious prosecution of Plaintiff. The second issue is whether there is a genuine issue of material fact as to whether Deputy Phillips had probable cause to seek Plaintiff's arrest. The third issue is whether Sheriff Chapman is entitled to sovereign immunity. Finally, the fourth issue is whether Sheriff Chapman

may be held both strictly and vicariously liable for Deputy Phillips' actions.

The Court holds that Deputy Phillips is not entitled to qualified immunity in this case because genuine issues of material fact remain regarding whether Defendant violated Plaintiff's clearly established Fourth Amendment rights against unlawful arrest. Further, the Court holds that Sheriff Chapman in his individual capacity may be held strictly and vicariously liable for Deputy Phillips' actions, because Deputy Phillips was acting *colore officii* when he allegedly violated Plaintiff's rights and thus Sheriff Chapman is not entitled to sovereign immunity.

## I. FACTUAL BACKGROUND

On August 11, 2013, after completing his night shift with the Mount Weather Police Department, Plaintiff Mr. White was pulled over by Defendant Deputy Phillips while attempting to enter his master planned residential community near Ashburn, Virginia. (Doc. 1, ¶¶ 7–12.) On the date and time in question, several entrances to Mr. White's community were blocked by police cruisers due to runners and cyclists participating in an organized triathlon. (*Id.* at ¶¶ 10–11.) On his third attempt to find an open entrance into his neighborhood, Mr. White saw yet another police cruiser and approached at a slow rate of speed in order to determine if he would be able to reach his home. (*Id.* at ¶¶ 11–12.) As Mr. White approached, Deputy Phillips ran out and yelled for Mr. White to slow down. (*Id.* at ¶ 12.) Mr. White obeyed and stopped his vehicle. (*Id.* at ¶ 12.)

Deputy Phillips, still yelling and with his hand on his weapon, then instructed Mr. White to back his car over to the curb. (*Id.* at ¶ 13.) Mr. White complied. (*Id.*)

As Mr. White was backing up however, Deputy Phillips without any provocation grabbed the driver's side mirror of Mr. White's car. (*Id.*) Concerned about potential damage to his vehicle, Mr. White got out of his car to inspect the side mirror, at which point Mr. White's police uniform was plainly visible. (*Id.* at ¶ 14.) After Mr. White exited his vehicle, Deputy Phillip made inappropriate physical contact with Mr. White. (*Id.* at ¶ 15.) Mr. White verbally protested explaining to Deputy Phillips that there was no need to use force. (*Id.*) Deputy Phillips next asked Mr. White for his license and registration. (*Id.* at ¶ 16.) Mr. White produced his license, badge, and credentials from the Department of Homeland Security, but was unable to locate his registration. (*Id.* at ¶¶ 16–17.) After returning to the car in an attempt to locate his registration, Deputy Phillips asked Mr. White to remain in the car. (*Id.* at ¶ 17.)

Deputy Phillips then took out his ticket book and called to request that another office join him on the scene. (*Id.* at ¶ 18.) Sergeant Jay Cleveland Conner of the Loudoun County Sheriff's Office approached the scene and began talking to Deputy Phillips shortly thereafter. (*Id.*) Upon arriving at the scene Sergeant Conner interviewed a witness who was attending to a nearby water station. (*Id.* at ¶ 19.) The witness told Sergeant Conner that she had not observed Mr. White assault Deputy Phillips. (*Id.* at ¶ 19.)

During this period, Mr. White's wife called Mr. White concerned because he had not arrived home from his shift. (*Id.* at ¶ 20.) Mr. White informed his wife that he had been involved in a traffic stop. (*Id.*) During the conversation, Mr. White told Mrs. White that Sergeant Conner was approaching the car. (*Id.*) Mrs. White could hear Mr. White being told that he was going to receive a summons for reckless driving. (*Id.*) Concerned about her husband, Mrs. White, who was in her pajamas, drove the short distance to the scene of the traffic stop. (*Id.* at ¶ 21; Doc. 120, ¶ 33) Upon arriving at the scene Mrs. White asked Sergeant Conner to identify the supervising officer, to which he replied he was the supervisor. (Doc. 1, ¶ 21) Mrs. White also expressed concern that the officers were humiliating Mr. White in front of their community. (*Id.*) At that point Deputy Phillips approached Mrs. White and said "Ma'am, I'm the one at fault. Don't take this out on my supervisor. I initiated this." (*Id.* at ¶ 22.) Mrs. White inquired as to whether there would be a summons issued, to which Deputy Phillips responded that there would not be. (*Id.*) At the conclusion of the incident both Mr. and Mrs. White were allowed to leave the scene. (*Id.* at ¶ 24.) No arrests were made, no summonses were issued, and no charges were filed. (*Id.* at ¶ 24.) Prior to leaving the scene Mrs. White informed Deputy Phillips that she would be filing a complaint regarding the incident. (*Id.* at ¶ 23.)

Mrs. White filed a complaint. (*Id.* at ¶ 25.) After explaining the situation to someone at the Loudoun County Sheriff's Office, Lieutenant Kenneth Christensen was dispatched to the White's house to investigate the complaint. (*Id.* at ¶ 26.) While en route to the White's house, Lieutenant Christensen announced over the radio that he was traveling to the White's house to take a complaint. (*Id.* at ¶ 26.) Lieutenant Christensen spoke with the Whites for approximately one hour and took several pages of notes. (*Id.* at ¶ 27.) Lieutenant Christensen also recorded the conversation although neither Mr. nor Mrs. White were aware of this fact. (Doc. 101, ¶ 48; Doc. 161, ¶ 48.) Mr. White alleges that at some point later that day Deputy Phillips learned that the White's

had filed a complaint with Lieutenant Christensen. (*Id.* at ¶ 28.)

Despite being aware of the potential internal affairs investigation that would take place, Deputy Phillips placed calls to two eyewitnesses who were in fact later interviewed by Internal Affairs. (*Id.* at ¶ 29.) In what Mr. White argues was a response to their complaint to the Sheriff's Office, Deputy Phillips orchestrated, through numerous false statements and without any probable cause, the arrest and prosecution of Mr. White on three charges: assaulting a police officer, disorderly conduct, and reckless driving. (*Id.* at ¶ 30.)

Mr. White alleges that Deputy Phillips first made several false statements in his incident report including: (1) estimating Mr. White's speed as he approached the police cruiser at 40–45 miles per hour; (2) stating that Mr. White did not obey his orders to stop the car during Deputy Phillips' initial attempt to stop Mr. White; (3) stating that Mr. White initially refused to back his car up when ordered and instead tried to swing open his door, causing Deputy Phillips to try to hold the door to Mr. White's car shut in attempt to prevent Mr. White from exiting the car; (4) alleging that his, Deputy Phillips', wrist was caught on the mirror of Mr. White's car as Mr. White backed up; (5) stating that he, Deputy Phillips, was dragged between two and three car lengths by Mr. White's car because his wrist was stuck; (6) stating that Mr. White refused to stop the car to let Deputy Phillips free his wrist; (7) stating that Mr. White made a number of profane statement he did not make; and finally (8) stating that Mr. White struck Deputy Phillips with his car door upon exiting the vehicle. (*Id.* at ¶ 31.) Mr. White alleges that Deputy Phillips' next step in his attempt to unlawfully arrest and maliciously prosecute him was to make false statements to the Commonwealth. Attorney's Office to gain the office's support for the unlawful arrest warrants that he intended to seek. (*Id.* at ¶ 32.)

Mr. White further alleges that the Commonwealth Attorney's Office made its decision to prosecute based on Deputy Phillips false statements. (*Id.* at ¶ 32.) Mr. White argues that the Commonwealth's decision to prosecute thus could not have been supported by probable cause. (*Id.* at ¶ 33.) On August 15, 2013, Deputy Phillips filed a criminal complaint against Mr. White. (*Id.* at ¶ 34.) That same day Deputy Phillips also made allegedly false statements to the magistrate who then issued warrants for Mr. White's arrest for felony assault on a police office (Va.Code § 18.2–57), misdemeanor disorderly conduct (Va.Code § 18.2–45), and misdemeanor reckless driving (Va.Code § 46.2–852). (*Id.* at ¶ 35.)

After securing the warrants, Deputy Phillips notified Mr. White's commanding officers at the Mount Weather Police Department of the warrants. (*Id.* at ¶ 39.) Mr. White was asked to report to the Mount Weather Police Department to turn in his badge and weapon. (*Id.* at ¶ 40.) After surrendering his weapon and badge, Mr. White turned himself in to the Loudoun County Sheriff's Office, where he was arrested on all three charges. (*Id.*) Mr. White was handcuffed and detained for several hours after his arrest. (*Id.* at ¶ 41.)

On November 6, 2013, at Mr. White's preliminary hearing, the Commonwealth's Attorney chose not to precede against Mr. White on the two misdemeanor charges. (*Id.* at ¶ 42.) At the hearing, Deputy Phillips, the only witness at the hearing, continued to make false statements, even under oath. (*Id.* at ¶ 43–44.) Based on Deputy Phillips' statements, the presiding judge certified the charge of assaulting a

police office to a Circuit Court grand jury. (*Id.* at ¶ 43.)

On November 18, 2013, the grand jury returned a no true bill with respect to Mr. White's assault charge. (*Id.* at ¶ 45.) Additionally, though the Commonwealth Attorney's Office had initially entered a *nolle prosequi* as to the two misdemeanors, both were reinstated during the grand jury deliberations. (*Id.* at ¶ 46.) Mr. White was charged with disorderly conduct and reckless driving by the grand jury. (*Id.*) On April 17, 2014, a jury acquitted Mr. White of both misdemeanor charges. (*Id.* at ¶ 49.)

Mr. White contends that his arrest and prosecutions have caused him mental anguish, humiliation, embarrassment, and harm to reputation. (*Id.* at ¶ 50.) Mr. White is currently under the care of a mental health professional. (*Id.*) Additionally, Mr. White was put on administrative leave, had his security clearance suspended, and was placed on leave with pay and leave without pay throughout the course of this ordeal. (*Id.* at ¶ 51–56.) Even after returning to work, Mr. White was not given back his gun or badge and he was instead placed on limited duty. (*Id.* at ¶ 55.) During this investigation and prosecution Mr. White was ineligible for overtime or other special compensation. (*Id.* at ¶ 55.) A little less than two months after returning to work, Mr. White was again placed on administrative leave because he was in counseling. (*Id.* at ¶ 56.) Mr. White recently returned to active duty, however, his period of indefinite suspension is still reflected on his official record. (*Id.* at ¶ 60.) Mr. White has also expended significant resources related to his arrest and prosecutions, including attorney's fees. (*Id.* at ¶ 62.)

## II. PROCEDURAL HISTORY

Mr. White filed the present action against Defendants Deputy Wade P. Phillips and Sheriff Michael L. Chapman of the Loudoun County Sheriff's Office in this Court pursuant to 42 U.S.C. § 1983, for unlawful arrest and malicious prosecution related to an August 11, 2013 traffic stop. (Doc. 1.) Count I alleges false arrest against Deputy Phillips, while Counts II–V are federal and state malicious prosecutions claims for both the felony and misdemeanor charges that were brought against Plaintiff. (*Id.*) Finally, Count VI alleges state malicious prosecution claims against Sheriff Chapman for his liability in Counts IV and V. (*Id.*) On February 16, 2014, Defendants brought separate motions for summary judgment. (Docs. 100, 119, and 122) The matter was fully briefed and argued by the parties and is now properly before the Court.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (2014).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir.2012) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (citations omitted). "[T]he mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008) (quoting *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505).

■ A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir.2005) (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. ANALYSIS

### A. Deputy Phillips Motion for Summary Judgment

■ The Court DENIES Defendant Phillips' Motion for Summary Judgment and request for qualified immunity because genuine issues of material fact remain regarding whether Defendant Phillips is liable for violating Plaintiff's constitutional rights in obtaining arrests warrants based on false statements and thus absent probable cause.

■ A civil suit for damages may be brought under 42 U.S.C. § 1983 against persons acting "under color of state law" who violate civil rights secured by the federal law. *Mial v. Sherin,* No. 1:11–cv-921 (GBL/IDD), 2012 WL 2838424, at *5 (E.D.Va. July 9, 2012) (citing *Gregg v. Ham*, 678 F.3d 333, 339 (4th Cir.2012)). However, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, —— U.S. ——, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)) (internal quotation marks omitted).

■ "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231, 129 S.Ct. 808. Whether a public official "may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal citations omitted). The qualified immunity doctrine protects government officials from ambiguity or haziness in the state of the law, and

ensures that they are "on notice their conduct is unlawful" before they are subjected to suit. *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson,* 555 U.S. at 239–40, 129 S.Ct. 808.

 The resolution of a qualified immunity defense is a two-pronged inquiry, requiring the court to determine: (1) whether the facts established by the plaintiff make out a violation of a federal right; and, once the violation is established, (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson,* 555 U.S. at 232, 129 S.Ct. 808. With respect to the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Creighton,* 483 U.S. at 640, 107 S.Ct. 3034 (1987) (internal citations omitted); *see Torchinsky v. Siwinski,* 942 F.2d 257, 260 (4th Cir.1991) (holding that the court need only determine "whether [ ] a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity"). When deciding whether a reasonable officer would have been aware of the federal right, the court does not require the official "to sort out conflicting decisions or to resolve subtle or open issues." *Campbell v. Galloway,* 483 F.3d 258, 271 (4th Cir.2007) (quoting *McVey v. Stacy,* 157 F.3d 271, 277 (4th Cir.1998)). The unlawfulness of the action must be apparent "in the light of pre-existing law" in order for a reasonable officer to have been aware that the action violated a federal right. *Creighton,* 483 U.S. at 640, 107 S.Ct. 3034. However, the specific official action need not to have previously been held unlawful in order for the officer to be held liable for violating the right. *Id.*

 "Ordinarily, the question of qualified immunity should be decided at the summary judgment stage." *Willingham v. Crooke,* 412 F.3d 553, 558 (4th Cir.2005). However, the Supreme Court has held that summary judgment and findings of qualified immunity are improper in civil right cases against police officers, where the plaintiff and the defendant police officer give conflicting accounts of the alleged events. *Tolan v. Cotton,* —— U.S. ——, 134 S.Ct. 1861, 1868, 188 L.Ed.2d 895 (2014). The doctrine offers immunity "from the burdens of litigation," not merely a defense to liability. *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir.1992). This immunity "is effectively lost if a case is erroneously permitted to go to trial.' " *Cloaninger ex rel. Estate of Cloaninger v. McDevitt,* 555 F.3d 324, 330 (4th Cir.2009) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The issue of "whether a right allegedly violated was clearly established ... at the time of the challenged conduct is always a matter of law for the court [and therefore] always capable of decision at the summary judgment stage." *Pritchett,* 973 F.2d at 313; *see also Saucier,* 533 U.S. at 202, 121 S.Ct. 2151 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."). However, the doctrine of qualified immunity "does not ... override the ordinary rules applicable to summary judgment proceedings." *Willingham,* 412 F.3d at 559. "[A] genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred ... must be reserved for trial.' " *Id.* (quoting *Pritchett,* 973 F.2d at 313).

 Based on the evidence in the record, the Court holds that Defendant Phillips is not entitled to qualified immunity and denies Defendant Phillips' Motion for

Summary Judgment for two reasons. As to qualified immunity, the constitutional rights at issue are clearly established, and a reasonable officer would have been aware of the Fourth Amendment requirement of probable cause for arrest or issuing a summons on a traffic stop. Here the officer did not issue a summons at the scene and allegedly told Plaintiff and his wife no charges would be brought. Plaintiff alleges that after Deputy Phillips learned that he had initiated a complaint against the officer, the officer sought out the Commonwealth's Attorney and made incomplete and false statements in order to induce the Commonwealth's Attorney into advising the officer to seek a warrant. Plaintiff further alleges that Defendant Deputy Phillips testified falsely at both the preliminary hearing and the grand jury proceedings. The Court cannot grant Defendant Deputy Phillips qualified immunity in this matter without assessing the credibility of the officer and the Plaintiff. Second, because there remain genuine issues of material fact regarding whether Defendant Phillips' conduct violated Plaintiff's Fourth Amendment rights to be secure in his person and that no warrants shall issue but upon probable cause, summary judgment is not warranted. *See* U.S. Const. amend. IV. Several facts regarding the traffic stop and the presence or lack thereof of probable cause remain in question. Accordingly, Defendant Phillips is not entitled to either qualified immunity or summary judgment.

**B. Sheriff Chapman's Motion for Summary Judgment**

The Court DENIES Defendant Chapman's Motion for Summary Judgment because Sheriff Chapman in his individual capacity may be held strictly and vicariously liable for Deputy Phillips' actions, because Deputy Phillips was acting *colore officii* when he allegedly violated

Plaintiff's rights and thus Sheriff Chapman is not entitled to sovereign immunity. Additionally, there remain genuine issues of material fact regarding Defendant Phillips' alleged violations of Plaintiff's constitutional rights for which Defendant Sheriff Chapman may be liable.

Plaintiff's Complaint alleges that his unlawful arrest and malicious prosecution occurred while Deputy Phillips was on duty and acting under color of state law with the Loudoun County Sheriff's Office. The Complaint further alleges that Loudoun County Sheriff Michael L. Chapman is both vicariously and strictly liable for the acts of Deputy Phillips.

To state a claim under Virginia law that Sheriff Chapman is vicariously liable for Deputy Phillips' alleged conduct on the basis of *respondeat superior,* Plaintiff must allege that the constitutional violation occurred while Deputy Phillips was performing his employer's business and acting within the scope of his employment. *See Butler v. Southern States Coop. Inc.,* 270 Va. 459, 620 S.E.2d 768, 773 (2005); *see also Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.,* 249 Va. 39, 453 S.E.2d 261, 265 (1995) ("Under the doctrine of *respondeat superior,* an employer may be liable for an employee's tortious conduct where the activity that gave rise to the tortious act was within the scope of the employment."). There is no issue here that Deputy Phillips was acting within the scope of his employment when he effected a traffic stop on Mr. White.

In *Miller v. Jones,* 50 Va. (9 Gratt.) 584 (1853), the Supreme Court of Virginia addressed the liability of a sheriff for the acts of his deputy. After stating the ordinary rule that a principal is liable for the misfeasance and negligence of his agent, the Court stated that "on principles of public policy, the liability of a sheriff for

his deputy is much more extensive." 50 Va. at 602. The court stated that the "[the sheriff] is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression, and his officers are answerable over to him. There is a difference between master and servant; but a sheriff and all his officers are considered, in cases like this, as one person." *Id.* at 603. The court continued, finding that "acts and defaults of the deputy, *colore officii*, are considered in law as the acts and defaults of the sheriff, who is liable therefor in the same form of action as if they had been actually committed by himself." *Id.;* · *see also Sangster v. Commonwealth*, 58 Va. (17 Gratt.) 124, 131 (1866); *Agyeman v. Winston*, 26 Va. Cir. 140, 142–43, 1991 WL 835356 (1991)(concluding that *Miller* "still state[s] the law").

Defendant Chapman relies on several cases in support of his argument that he is entitled to sovereign immunity, mainly *Harrison v. Prince William County Police Dep't*, 640 F.Supp.2d 688 (E.D.Va.2009), *Savage v. County of Stafford, Va.*, 2010 WL 1873222 (E.D.Va. May 4, 2010), and *Watson v. Knight*, 62 Va. Cir. 123, 2003 WL 21661892 (2003). Although the defendants rely on two cases from this district and a Virginia circuit court decision holding that a sheriff is entitled to sovereign immunity for torts committed by his deputies, neither of these decisions specifically address the continued viability of the Supreme Court of Virginia's decision in *Miller. See generally Watson*, 62 Va. Cir. 123; *Small v. Jackson*, 4 Va. Cir. 262, 1985 WL 675128 (1985). In *Savage*, an unpublished decision that is not binding, the court found that the "Sheriff's Office is protected by sovereign immunity when the false arrest claim is based on vicarious liability," however, that case involved claims against the Sheriff and the Sheriff's office pursuant to 42 U.S.C. § 1983 for

which there is no vicarious liability, unlike the state claims here. The claims here are not against the Sheriff in his official capacity or the Sheriff's office. In *Harrison*, the court in holding that a police chief was entitled to sovereign immunity, stated that the Virginia Circuit Court's decision in *Agyeman* "relied on eighteenth and nineteenth century authority" which implicitly conflict with "more modern authority." *Id.* at 712. Again, however, the court's decision did· not address the validity of *Miller* or how the more modern authority had overturned the previous authority. Accordingly, it is fair to say that there is a split of authority as to the liability of a sheriff under Virginia law for the acts of his deputies.

The Court finds that *Miller* is still controlling law and therefore holds that Defendant, Sheriff Chapman, may be held vicariously liable for state law malicious prosecution. Accordingly, Defendant Chapman is not entitled to sovereign immunity.

 As to strict liability, the Court finds that Sheriff Chapman is liable for his deputies' acts if they were acting *colore officii.* "Acts taken *colore officii* are an [o]fficer's acts unauthorized by his position, though done in form that purports that acts are done by official duty and by virtue of office." *Westmoreland v. Brown*, 883 F.Supp. 67, 79 (E.D.Va.1995) (internal citation and quotation marks omitted). Here, there is no argument that Deputy Phillips ·was indeed acting *colore officii.* Defendant Chapman only argues that he is not liable in his individual capacity, which the Court finds unpersuasive.

*Westmoreland* involved a deputy sheriff who, for personal reasons, allegedly conspired with inmates to arrange an assault on a fellow detainee. 883 F.Supp. 67. The court held that the sheriff was not

liable for the deputy sheriff's actions, although in normal course "a sheriff is strictly liable for the acts of his deputy taken *colore officii.*" *Id.* at 79. The court explained that the deputy sheriff was not acting under the color of office because the deputy did not claim to have lawful authority to arrange the attack and none of the conspiring inmates would have perceived that the deputy sheriff had such authority. *Id.* Similarly, in *K.I.D. v. Jones,* the court found that "[u]nder Virginia law, a sheriff is strictly liable for all the actions of his deputy performed *colore officii,* or under color of office." 3:14cv177–JAG, 2014 WL 3616131, at *2 (E.D.Va. July 18, 2014) (internal citations omitted). Because there is no argument that Deputy Phillips was acting *colore officii,* the Court finds that Sheriff Chapman may be held strictly liable.

There remain genuine issues of material fact regarding Defendant Phillips' alleged violations of Plaintiff's constitutional rights for which Defendant Sheriff Chapman may be liable. Accordingly, the Court denies Defendant Chapman's Motion for Summary Judgment.

## V. CONCLUSION

The Court DENIES Defendants Phillips' and Chapman's Motions for Summary Judgment (Docs. 100, 119, and 122). The Court holds that Deputy Phillips is not entitled to qualified immunity in this case because genuine issues of material fact remain regarding whether Defendant violated Plaintiff's clearly established Fourth Amendment rights against unlawful arrest. Further, the Court holds that Sheriff Chapman in his individual capacity may be held strictly and vicariously liable for Deputy Phillips' actions, because Deputy Phillips was acting *colore officii* when he allegedly violated Plaintiff's rights and thus

Sheriff Chapman is not entitled to sovereign immunity. It is hereby

**ORDERED** that Defendant Loudoun County Sheriff Michael L. Chapman's Motion for Summary Judgment (Doc. 100) is **DENIED;** and it is further

**ORDERED** that Defendant Loudoun County Deputy Sheriff Wade P. Phillips' Motion for Summary Judgment (Docs. 119 and 122) is **DENIED.**

**IT IS SO ORDERED.**